IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOSEPH TERRY and )
JONAH ROSS TERRY, )
    )
    Plaintiffs, )
    )
v. ) CIVIL ACTION NO. 09-00722-KD-N
    )
GROVER SMITH, et al., )
    )
    Defendants. )

REPORT AND RECOMMENDATION

This action is before the Court on a motion to dismiss and brief in support (docs. 27-28) filed by Judge J. David Jordan[1] and District Attorney Stephen Billy[2], defendants herein. The matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B). Upon consideration of these defendants' motion, plaintiffs' response in opposition thereto (doc. 55)[3] and all other pertinent portions of the record, it is recommended that defendants' motion to dismiss be GRANTED.

    I.    <u>Factual and Procedural Background</u>.

---

[1] Judge Jordan is a District Court Judge in Escambia County, Alabama. (Doc. 18)

[2] Defendant Stephen Billy is not included in the section of Plaintiffs' Amended Complaint identifying the parties but is included in the factual allegations and claims portions of the amended complaint. (Doc. 18)

[3] After careful review of the parties' written submissions the undersigned is of the opinion that oral argument would not materially assist the Court in understanding and resolving the issues presented. Accordingly, the plaintiffs' request for oral argument is **denied**. *See* Local Rule 7.3 ("the court may in its discretion rule on any motion without oral argument").

The plaintiffs, Joseph Terry and Jonah Ross Terry, allege that on October 7, 2009, they were arrested by Sheriff Grover Smith and Deputy Bruce Shue and charged with Criminal Trespass Third Degree.[4] Amended Complaint (doc. 18) at ¶ ¶ III(A) and (B). Plaintiffs claim ownership of the property on which they were trespassing, which is known as "old County Road 14." *Id*. at ¶¶ III(B) and (C). Indictments raising additional charges were subsequently issued against the plaintiffs and are currently pending in the Circuit Court of Escambia County, Alabama. *Id*. at ¶ III(E).

On November 3, 2009, plaintiffs filed this action (doc. 1) alleging violations of 42 U.S.C. §§ 1983 and 1985. On December 15, 2009, in response to defendants various motions to dismiss and/or for more definite statements (docs. 5-6, 8-9, and 13-14), plaintiffs filed an Amended Complaint (doc. 18) seeking only compensatory and punitive damages. The first motion to dismiss (docs. 5-6) filed by Judge Jordan and District Attorney Billy was denied as

---

[4] Plaintiffs allege, in sum, that around October 7, 2009 they were working on their property in Escambia County, Alabama and were arrested by Sheriff Grove Smith and Deputy Bruce Shue and charged with Criminal Trespass 3rd . (Doc. 18) Plaintiffs contend that "[p]rior to this arrest Sheriff Smith and Deputy Shue were advised by the Plaintiffs that the Escambia County Commission had vacated the road and that the property belonged to the Terrys." (Id. at p. 3) Plaintiffs further allege that as a condition of the bond they were ordered to "stay off 'old County Road 14 stay off property that is owned by Escambia County Commission on old County Road 14." (Id. at p.4) Plaintiffs allege that "[i]t is undisputed that the old County Road 14 has been vacated by the Escambia County Commission" and that "[p]rior to the arrest both [defendants] Hammonds and Mothershed had conversations with the Terrys regarding ownership of old County 14 and the placement of the casino on the Terrys' property" and that "Sheriff Smith, Deputy Shue, Hammonds and Mothershed conspired to cause these arrests in an effort to gain advantage over negotiations regarding the purchase of certain disputed property." (Id.) Plaintiffs further allege that "[a]ll of the Defendants named herein had knowledge prior to the arrest that the Escambia County Commission had vacated old County Road 14 and that the Escambia County Commission had no ownership interest in said property at the time of the Plaintiffs' arrest." (Id. at p. 5)

moot (doc. 21) on December 16, 2009, in light of plaintiffs' Amended Complaint. A second motion to dismiss (doc. 27-28) was then filed by Judge Jordan and District Attorney Billy on December 28, 2009, and addresses plaintiffs' Amended Complaint. Defendants Jordan and Billy move for dismissal on the grounds, in sum, of judicial immunity, prosecutorial immunity, Eleventh Amendment immunity and qualified immunity. The matters at issue have now been sufficiently briefed by the parties.

II.  Standard of Review.[5]

Prior to Bell Atlantic v. Twombly, 550 U.S. 544 (2007), a court could only dismiss a complaint "if it is was clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," language set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957). This language as it relates to the Rule 12(b)(6) standard was expressly rejected in Twombly wherein the Supreme Court set forth the following standard regarding a court's determination of the sufficiency of pleading such as is in issue in this case:

Federal Rule of Civil Procedure 8(a)(2) requires only " a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [citation omitted] a plaintiff's obligation to provide the

---

[5] "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto'." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000), *quoting*, GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir.1993). All "reasonable inferences" are drawn in favor of the plaintiffs. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

"grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do [citation omitted]. Factual allegations must be enough to raise a right to relief above the speculative level. 550 U.S. at 555. The Supreme Court emphasized, however, that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.

The Supreme Court recently reinforced the Twombly standard in Ashcroft v. Iqbal, – U.S. – , 129 S.Ct. 1937, 1949-50 (2009). The Court reiterated that a claim is insufficiently pled if it offers only "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'." Iqbal, 129 S.Ct. at 1949, quoting Twombly, 550 U.S. at 557. The Iqbal Court explained:

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."

Iqbal, 129 S.Ct. at 1949-50 (citation and internal punctuation omitted). *See also*, Phillips v. County of Allegheny, 515 F.3d 224, 233 (3rd Cir. 2008)("After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts

4

suggestive of [the proscribed] conduct'."), *quoting* Twombly, 550 U.S. at 553, n. 8. *See also*, Sinaltrainal v. Coca-Cola Co., 2009 WL 2431463 (11th Cir. Aug. 11, 2009)("The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss [citing Iqbal, 129 S.Ct. at 1949] [and] [t]he well-pled allegations must nudge the claim 'across the line from conceivable to plausible'" [*quoting* Twombly, 550 U.S. at 570]"). With this legal framework in mind the Court now turns to the merits of defendants' motion s to dismiss.

III.   Discussion.

Plaintiffs assert their claims against Judge Jordan and District Attorney Billy under 42 U.S.C. §§ 1983 and 1985 for deprivation of their liberty and property rights guaranteed by the Fourth and Fifth Amendments to the United States Constitution. *Id*. at ¶ ¶ IV(A) and (B). Plaintiffs seek compensatory and punitive damages against each of the defendants, including Judge Jordan and District Attorney Billy. *Id.* at ¶ V. Plaintiffs' sole allegation against Judge Jordan and District Attorney Billy is that they "conspired with the other defendants herein . . . to deprived the Plaintiffs of their liberty and their right to use their property and used the court system to accomplish the conspiracy." Amended Complaint (doc. 18) at ¶ III(G). Plaintiffs then make a general assertion that:

> All of the Defendants named herein had knowledge prior to the arrest that the Escambia County Commission had vacated old County Road 14 and that the Escambia County Commission had no ownership interest in said property at the time of the Plaintiff's arrest.

*Id.* at ¶ III(H). Judge Jordan and District Attorney Billy argue that they are entitled to judicial and prosecutorial immunity, respectively, as well as Eleventh Amendment immunity and qualified immunity.[6]

   A.   Judicial Immunity.

A two-part test is utilized in order to determine when a judge is entitled to immunity when sued under § 1983: "[t]he first part of the test is whether the judge dealt with the plaintiff in a judicial capacity" and the second part of the test is "whether the judge acted in the 'clear absence of all jurisdiction'." Simmon v. Conger, 86 F.3d 1080, 1084-1085 (11th Cir. 1996), *quoting* Stump v. Sparkmen, 435 U.S. 349, 357 and 362 (1978). In Stump, the Supreme Court held that there is a "distinction between lack of jurisdiction and excess jurisdiction" as illustrated by the following examples:

---

[6] Defendants also raise a defense of qualified immunity. A Section 1983 claim against a government official sued in his individual capacity is subject to a heightened pleading requirement in this circuit in order to protect public officials from the burdens of protracted litigation. CJR Invs., Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367 (11th Cir. 1998). In such cases, the Eleventh Circuit requires a § 1983 plaintiff to allege "with some specificity" the facts supporting a claim against a public official who is arguably entitled to qualified immunity. Id. The complaint must include "specific, non-conclusory allegations of fact that will enable the district court to determine that those facts, if proved, will overcome the defense of qualified immunity." Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003). In evaluating claims of qualified immunity, the Court must engage in a two-pronged inquiry: (1) whether the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was "clearly established" at the time of the defendant's misconduct. The Eleventh Circuit has instructed that "[t]his two-pronged analysis may be done in whatever order is deemed most appropriate for the case." Rehberg v. Paulk, 2010 WL 2788199, *5 (11th Cir., July 16, 2010) *citing* Pearson v. Callahan, 555 U.S. ----, 129 S.Ct. 808, 821, 172 L.Ed.2d 565 (2009). Vague and conclusory' allegations are insufficient to overcome a motion to dismiss. Id; *see also* Dukes v. Miami-Dade County, 232 Fed. Appx. 907 (11th Cir.2007) (supporting the claim that " 'vague' and 'conclusory' allegations are insufficient to state a violation of a protected right that is necessary to deny the Defendants' qualified immunity"). Plaintiffs' allegations against defendants Billy and Jordan are vague and conclusory and are insufficient to overcome defendants' motion to dismiss.

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a ***nonexistent crime***, he would merely be ***acting in excess of his jurisdiction and would be immune***.

435 U.S. at 357, n. 7 (emphasis added), *citing* Bradley v. Fisher, 80 U.S. 335, 352 (1871). The Eleventh Circuit has also emphasized that:

> A judge does not act in the "clear absence of all jurisdiction" when he acts erroneously, maliciously, or in excess of his authority, but instead, only when he acts without subject-matter jurisdiction.

*Id.* , *citing* Dykes v. Hosemann, 776 F.2d 942, 947-48 (11th Cir.1985).

Plaintiffs do not dispute that Judge Jordan was acting in his judicial role when he "issued a bond order with conditions that the Plaintiffs were to '[s]tay off property that is owned by Escambia Co. Comm. on Old Co. Rd. 14 [sic]'." Opposition Brief (doc. 55) at 2. Plaintiffs nonetheless argue that Judge Jordan "acted in the clear absence of all jurisdiction." *Id.* at 3. In support of this argument plaintiffs rely, in part, on Hagood v. Sullivan, 2010 WL 2910973, * 1 (11th Cir. July 27, 2010), wherein the Eleventh Circuit opined, in pertinent part:

> Judges are entitled to absolute judicial immunity from damages under section 1983 for those acts taken while they are acting in their judicial capacity ***unless they acted in the clear absence of all jurisdiction***.

2010 WL 2910973 at * 1 (emphasis added), *citing* Sibley v. Lando, 437 F.3d 1067, 1070 (11th Cir. 2005). Plaintiffs' only basis in this case for contending that there was a "clear absence of all jurisdiction" is the vague allegation that Judge Jordan acted "for the purpose of advancing a known deception for the benefit and protection of persons and interests lacking nexus to the criminal action before him." Opposition Brief (doc. 55) at 3. Plaintiffs elsewhere essentially contend that they are the owners of the property in question and thus not guilty of trespass.

Because plaintiffs do not allege that, in his judicial capacity, Judge Jordan was *not* authorized under state law to issue bonds in question, plaintiffs' argument appears to be only that they are being prosecuted for a crime when "no crime had been committed." Amended Complaint (doc. 18) at ¶ III(B). Assuming *arguendo* that plaintiffs are correct, Judge Jordan's participation in such a prosecution would, however, amount to no more that an exercise "in excess of his jurisdiction" from which he is immune. Stump, *supra*, 435 U.S. at 357, n. 7. Consequently, Judge Jordan is entitled to absolute judicial immunity from plaintiffs' claims against him in his individual capacity in this § 1983 action and such claims are due to be dismissed. *Id*., 435 U.S. at 359-360 ("Because the court over which Judge Stump presides is one of general jurisdiction, neither the procedural errors he may have committed nor the lack of a specific statute authorizing his approval of the petition in question rendered him liable in damages for the consequences of his actions.").

The rationale for this outcome is well established. The Supreme Court has long recognized the necessity of judicial immunity. In Pierson v. Ray, the Supreme Court held:

> Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335, 20 L.Ed. 646 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.' [Citation omitted]  It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation.

386 U.S. 547, 554 (1986). The Supreme Court again addressed the purposes served by judicial immunity in Forrester v. White:

> In Bradley v. Fisher, [13 Wall. 335, 348, 20 L.Ed. 646 (1872)], and again in Pierson v. Ray, supra, [386 U.S. 547] at 554, the Court emphasized that the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have. . . .[T]his is the principal characteristic that adjudication has in common with legislation and with criminal prosecution, which are the two other areas in which absolute immunity has most generously been provided. If judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits. The resulting timidity would be hard to detect or control, and it would manifestly detract from independent and impartial adjudication. Nor are suits against judges the only available means through which litigants can protect themselves from the consequences of judicial error. Most judicial mistakes or wrongs are open to correction through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability.

484 U.S. 219, 226-227 (1988). Accepting the allegations as true and construing the facts in the light most favorable to the plaintiffs, the circumstances alleged do not support plaintiffs' argument that Judge Jordan acted in the "clear absence of all jurisdiction." Consequently, plaintiffs' § 1983 claims against Judge Jordan are barred by judicial immunity and are due to be dismissed.

     B.    Prosecutorial Immunity.

Plaintiffs' § 1983 claims against District Attorney Billy are likewise barred by his absolute prosecutorial immunity. In § 1983 actions, prosecutors have absolute immunity for all activities that are " 'intimately associated with the judicial phase of the criminal process.' " Van de Kamp v. Goldstein, --- U.S. ----, 129 S.Ct. 855, 860, 172 L.Ed.2d 706 (2009) (quoting Imbler, 424 U.S. at 430, 96 S.Ct. at 995); *accord* Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir.1999). In Imbler v. Pachtman, the Supreme Court first addressed § 1983 liability of state prosecuting

officers and adopted the virtually unanimous holdings of the Courts of Appeal that "a prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." 424 U.S. 409, 420 (1976). The rationale is clear:

> The common-law immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges and grant jurors acting within the scope of their duties. [Footnote omitted] These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust.

424 U.S. at 422-423.[7] A functional approach is employed in determining whether a prosecutor is absolutely immune from § 1983 liability in that immunity is granted to all conduct which is "intimately associated with the judicial phase of the criminal process," including conduct[8] in

---

[7] The Supreme Court in Imbler also adopted the following illustration of the considerations that underlie the immunities of judges, grand jurors and prosecutors:

> "The office of public prosecutor is one which must be administered with courage and independence. Yet how can this be if the prosecutor is made subject to suit by those whom he accuses and fails to convict? To allow this would open the way for unlimited harassment and embarrassment of the most conscientious officials by those who would profit thereby. There would be involved in every case the possible consequences of a failure to obtain a conviction. There would always be a question of possible civil action in case the prosecutor saw fit to move dismissal of the case. . . . The apprehension of such consequences would tend toward great uneasiness and toward weakening the fearless and impartial policy which should characterize the administration of this office. The work of the prosecutor would thus be impeded, and we would have moved away from the desired objective of stricter a fairer law enforcement."

424 U.S. at 423-424, *quoting* Pearson v. Reed, 6 Cal.App.2d 277, 287, 44 P.2d 592, 597 (1935).

[8] A prosecutorial function includes the initiation and pursuit of criminal prosecution. Imbler, 424 U.S. at 424. A prosecutor however is not entitled to absolute immunity if she performs any "investigative functions normally performed by a detective or police officer." *See* Buckley v. Fitzsimmons, 509 U.S. 259, 273, 113 S.Ct. 2606, 2616 (1993); *see also* Burns v. Reed, 500 U.S. 478, 496, 111 S.Ct. 1934, 1944-45, 114 L.Ed.2d 547 (1991) (no absolute immunity for a prosecutor who gives legal advice to police during pretrial investigation); Jones (Continued)

"initiating a prosecution and in presenting the State's case." Burns v. Reed, 500 U.S. 478, 486 (1991), *quoting* Imbler, 424 U.S. at 430-431. The Supreme Court went so far as to say that "at common law prosecutors were immune from suits for malicious prosecution and for defamation, and that this immunity extended to the knowing use of false testimony before the grand jury and at trial." Burns, 500 U.S. at 485, *citing* Imbler, 424 U.S. at 421-424, 426, and n. 23.

With respect to District Attorney Billy, plaintiffs first assert that "Defendant Billy would be 'entitled to absolute immunity for all acts he takes **while performing his function as an advocate for the government**'." Opposition Brief (doc. 55) at 3 (emphasis in original), *quoting in part* Hagood, *supra*, 2010 WL 2910973 at * 1. Plaintiffs then argue "[w]ere it shown, as is alleged, that Defendant Billy sought and obtained the said indictments based upon known falsehoods and for the purpose of providing a benefit and protection, for instance, for the parties involved in the arrests – and – others then he would not be acting as an advocate for the government and would not be entitled to immunity." Opposition Brief (doc. 55) at 4. By truncating the sentence used by the Eleventh Circuit in Hagood, plaintiffs have improperly restricted its meaning and significance, particularly to this case. The Eleventh Circuit's statement in Hagood, *supra*, was in fact: "A prosecutor is entitled to absolute immunity for all acts he takes while performing his function as an advocate for the government, *including pursuit of criminal prosecution, examining witnesses, and presentation of evidence*. 2010 WL 2910973 at * 1 (emphasis added). As applied to the instant case, plaintiffs concede that the

---

v. Cannon, 174 F.3d 1271, 1285 (11th Cir.1999) (prosecutor is only entitled to immunity for her conduct during the "judicial phase" of a case). There are no allegations in the complaint that District Attorney Billy performed any acts outside the protected realm of prosecutorial immunity.

conduct of District Attorney Billy which is at issue involves his procurement of the indictments issued against the plaintiffs. Such conduct is immune, even under the sole legal authority relied upon by the plaintiffs. In addition, this immunity extends even to the extent District Attorney Billy could possibly be proven to have knowingly used false testimony to procure the subject indictments. Burns, 500 U.S. at 485, *citing* Imbler, 424 U.S. at 421-424, 426, and n. 23. Consequently, plaintiffs § 1983 claims against District Attorney Billy are barred by absolute prosecutorial immunity and due to be dismissed.

    C.    <u>Eleventh Amendment Immunity</u>.

Any claims by the plaintiffs against Judge Jordan and District Attorney Billy in their official capacities for compensatory and punitive damages are also barred by the sovereign immunity of their employer, the State of Alabama. Simmons v. Conger, 86 F.3d 1080, 1085 (11th Cir. 1996)("'[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' and, '[a]s such, it is no different from a suit against the State itself'." ), *quoting* Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989)(holding in a damages action that neither a state nor its officials acting in their official capacities are "persons" subject to suit under section 1983). Consequently, to the extent the compensatory and punitive damages are sought by the plaintiffs against Judge Jordan and District Attorney Billy in their official capacities, plaintiffs' claims are due to be dismissed as barred by the Eleventh Amendment.

    D.    <u>Conspiracy claims under § 1985</u>.

Plaintiff alleges, in sum, that "Defendants Stephen Billy, David Jordan and John T. Moore conspired with the other Defendants herein above named to deprive the Plaintiffs of their

liberty and their right to use their property and used the court system to accomplish the conspiracy." (Doc. 18 at pp. 4-5) Defendants argue that this claim is due to be dismissed on the grounds that "[t]he Plaintiffs stated only vague and conclusory allegations regarding the alleged conspiracy among Defendants to violate their rights." (Doc. 28, p. 9)

A claim for conspiracy to interfere with civil rights and privileges is cognizable under 42 U.S.C. § 1985, which requires that the following elements be alleged and proven:

> (1) defendants engaged in a conspiracy; (2) the conspiracy's purpose was to directly or indirectly deprive a protected person or class the equal protection of the laws, or equal privileges and immunities under the laws; (3) a conspirator committed an act to further the conspiracy; and (4) as a result, the plaintiff suffered injury to either his person or his property, or was deprived of a right or privilege of a citizen of the United States.

Jimenez v. Wellstar Health System, 596 F.3d 1304, 1312 (11th Cir. 2010). *See also*, Lucero v. Operation Rescue in Birmingham, 954 F.2d 624, 627 (11th Cir. 1992)(same), quoting United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983). The Eleventh Circuit further held that "the second element requires a showing of 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'." Lucero, 954 F.2d at 628, *quoting* Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). The complaint in this case contains no allegation that the plaintiffs were subjected to any class-based discrimination or that the actions of Judge Jordan and District Attorney Billy were in any way motivated by class-based discriminatory animus. Because plaintiffs have not alleged any facts that support a plausible claim for civil conspiracy, their §1985 claims are due to be dismissed. *See* Montford v. Moreno, WL 1369563*8 (11th Cir. June 9, 2005)(" Montford made only conclusory allegations of a conspiracy and failed to allege any evidence that the

defendants reached an understanding to violate his rights. Moreover, Montford alleges the defendants' discriminatory intent only in a conclusory manner. Even reading Montford's complaint liberally, as we must, we conclude that Montford failed to state a valid claim under 42 U.S.C. § 1985.")(internal citation omitted)

IV. Conclusion.

For the reasons stated above, it is recommended that the motion to dismiss (doc. 27) filed by Judge J. David Jordan and District Attorney Stephen Billy, defendants herein, be **GRANTED** and all claims against these defendants be **DISMISSED with prejudice.**[9]

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the magistrate judge.

**Done** this  24th  day of August, 2010.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE**

---

[9] It is recommended that plaintiffs' request for leave to conduct some unspecified discovery "prior to determining whether the alleged conduct of these Defendants fall within the limits of their respective immunities" Opposition Brief (doc. 55) at 4, be **DENIED**.

# RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
## AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

**Objection**. Any party who objects to this recommendation or anything in it must, within fourteen days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a de novo determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(en banc). The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within [fourteen] days[10] after being served with a copy of the recommendation, unless a different time is established by order. The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

**Transcript (applicable where proceedings tape recorded)**. Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

**Done** this  24th  day of August, 2010.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

---

[10]Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).